OPINION OF THE COURT
Edwin Kassoff, J.
This is a proceeding pursuant to article 81 of the Mental Hygiene Law, seeking the appointment of a guardian for the property management and personal needs of the alleged incapacitated person (hereinafter AIP) Fannie Claiman.
Fannie Claiman is a 93-year-old woman who resided at 120-53 Springfield Boulevard, Cambria Heights, New York, with her 58-year-old son, David Claiman, the petitioner herein. Fannie Claiman was diagnosed as suffering from senile dementia and has been a patient at Long Island Jewish Hospital since January 10, 1996. Petitioner commenced this proceeding by order to show cause, seeking to be appointed as personal needs and property management guardian for his mother.
In the petition, it is alleged that Fannie Claiman is completely dependent upon others to meet all of her personal needs. For example, Mrs. Claiman cannot dress herself, requires daily assistance to be fed adequately, cannot tend to her personal hygienic needs, and has urinary incontinence and must be diapered several times a day. Petitioner also alleges that as a result of his mother’s condition, she is unable to manage her property.
Dr. Maury Harris, Fannie Claiman’s orthopedic surgeon since her admission to Long Island Jewish Hospital, submitted an affirmation in which he stated that Fannie Claiman suffers *883 from dementia and cannot carry on meaningful discussions with others. He also stated that she is unable to make any decisions regarding her medical care. Dr. Harris further opined that Fannie Claiman is unable to perform any activities of daily living without supervision or assistance. He noted that she is confined to bed or a chair and can only ambulate between the two with assistance. Dr. Harris explained that as a result of Fannie Claiman’s inability to understand and follow commands, her rehabilitation following surgery has been poor. In addition, he stated that Fannie Claiman is unable to take sufficient nourishment or hydration by mouth despite efforts to encourage her to eat and drink.
The court signed the order to show cause on May 21, 1996 and appointed petitioner as the temporary guardian for Fannie Claiman, pending a final determination of guardianship. Subsequently, Long Island Jewish Hospital sought to vacate petitioner’s appointment as temporary guardian for Fannie Claiman. Long Island Jewish Hospital asserted that petitioner engaged in inappropriate behavior, which endangered Fannie Claiman. The court granted Long Island Jewish Hospital’s request on May 31, 1996. On June 4, 1996, this court appointed Bernard Mirotznik as temporary guardian for Fannie Claiman, pending the final determination of guardianship.
A hearing was held before this court on June 27, 1996. The presence of Fannie Claiman was waived by the court since the court found and accepted the testimony offered by witnesses that Fannie Claiman could not understand or meaningfully participate in the proceedings. (See, Mental Hygiene Law § 81.11 [c] [2].)
At the outset of the hearing the court denied petitioner’s demand for a jury. Mental Hygiene Law § 81.11 (f) provides that "[i]f any party to the proceeding * * * raises issues of fact regarding the need for an appointment * * * and demands a jury trial of such issues, the court shall order a trial by jury thereof.” The only issue presented at the hearing was who should be appointed the permanent guardian for Fannie Claiman. Petitioner’s attorney, the attorney for Long Island Jewish Hospital, and the temporary guardian, Bernard Mirotznik all agreed that there was no issue of fact regarding the need for a guardian for Fannie Claiman. All the parties to the proceeding agreed that Fannie Claiman needs 24-hour care and is completely dependent on others for assistance. Therefore, pursuant to Mental Hygiene Law § 81.11 (f), the court denied petitioner’s demand for a. jury, as. no party to the *884 proceeding raised an issue of fact regarding the need for an appointment of a guardian. It is the function of the court, not the jury, to determine who will be appointed a guardian and the powers of the guardian.
There are no reported cases dealing with the issue of a demand for a jury in an article 81 proceeding. However, guidance is provided by case law under the predecessor conservator-ship and incompetency statutes, former articles 77 and 78 of the Mental Hygiene Law. Section 77.07 (c) of the former conservatorship statute contained identical language to Mental Hygiene Law § 81.11 (f) regarding the demand for a jury. In addition, former article 78, the incompetency statute, provided that "[t]he issue of competency shall be triable of right by jury which may be demanded by any party to the proceeding.” (Mental Hygiene Law former § 78.03 [e].) The cases analyzed under these statutes indicate that a jury was required only where there was an issue of fact regarding the need for a conservator under article 77 or an individual’s competency under article 78. For example, in Sporza v German Sav. Bank (192 NY 8, 21) the Court of Appeals held that a person alleged to be incompetent can demand a jury trial on the question of sanity. In addition, in Matter of Welch (257 App Div 1026), the appointment of a committee for an alleged incompetent was upheld. The Court noted that the jury resolved the question of fact concerning the competency of the individual and stated that the jury had ample opportunity to observe the witnesses who testified on the issue of competency. Similarly, in Matter of Schwinge (10 AD2d 882), the Second Department affirmed an order of the trial court directing that questions of fact on the issue of competency be tried by a jury. The court finds these cases persuasive and holds that no useful purpose would be served by a jury in the instant case since no factual issue is presented as to the need for a personal needs and property management guardian for the AIP. In light of the absence of a question of fact over the need for a guardian for Fannie Claiman, petitioner was not entitled to a jury trial.
During the hearing, the temporary guardian, Bernard Mirotznik, testified that he visited Fannie Claiman two weeks earlier at Long Island Jewish Hospital. He stated that he attempted to communicate with Fannie Claiman but did not receive any response to any of his questions. He testified that Fannie Claiman requires 24-hour care and should be discharged to a skilled nursing care facility on a permanent basis. He also submitted a report to this court recommending that a perma *885 nent guardian be appointed with the power to place the AIP in such a facility.
Article 81 creates a guardianship system that is tailored to meet the specific needs of the individual. (Mental Hygiene Law § 81.01.) Under the statute, the guardian is given only those powers which he needs and no more. In this way, article 81 seeks to foster the least restrictive form of intervention consistent with an individual’s self-determination. (Mental Hygiene Law § 81.02 [a] [2].)
Article 81 provides a two-prong test for determining whether a guardian should be appointed for an individual. Under Mental Hygiene Law § 81.02 (a) (1), the court can appoint a guardian for a person if it first determines that the appointment is necessary to provide for the personal needs or property management of the person. To satisfy the second prong, the individual must agree to the appointment or be incapacitated. (Mental Hygiene Law § 81.02 [a] [2]; Matter of Ehmke, 164 Misc 2d 609, 613; Matter of Kustka, 163 Misc 2d 694, 698.) Under section 81.02 (b), a determination of incapacity must be based on clear and convincing evidence that the person is likely to suffer harm because he is unable to provide for his personal needs and/or property management and he cannot adequately understand and appreciate the nature and consequences of his inability. Article 81 further requires the court to give "primary consideration” to one’s functional level and functional limitations in making a determination of incapacity. (Mental Hygiene Law § 81.02 [c].) This functional evaluation considers how an individual manages his activities of daily living, such as eating, shopping, dressing, toileting, housekeeping and money management. (Mental Hygiene Law § 81.03 [h].)
Applying these principles to the matter at hand, the court finds that there is clear and convincing evidence that the AIP is likely to suffer harm because she cannot provide for her personal needs and property management and is unable to adequately understand and appreciate the nature and consequences of this inability. The court further finds that the AIP’s functional limitations are such that she cannot communicate with people and is unable to respond to questions. She lacks the capacity to make mundane, everyday decisions and clearly is unable to make decisions concerning her medical care. The AIP is confined to a bed and, thus, is dependent on others and is unable to manage any activities of daily living without assistance. She has dementia and cannot follow simple commands *886 and is unable to take sufficient nourishment. Her physical and mental condition is unlikely to improve.
In view of the foregoing the court will appoint petitioner as the guardian for the personal needs and property management of Fannie Claiman. With respect to the personal needs of Fannie Claiman, the court grants the guardian the following powers: (1) to apply for government and private benefits; (2) to consent to or refuse generally accepted routine or major medical or dental treatment; and (3) to authorize access to or release of confidential records.
With regard to the property management of Fannie Claiman, the court directs that the guardian shall have the following powers: (1) to marshall assets and invest such assets as would a prudent person of discretion and intelligence; (2) to collect income, including Social Security income; (3) to convey or release contingent and expectant interest in property; (4) to exercise or release powers held by Mrs. Claiman as trustee, personal representative or guardian; (5) to enter contracts; (6) to create revocable or irrevocable trusts of property of the estate which may extend beyond the incapacity or life of Fannie Claiman; (7) to exercise options to purchase securities or other property; (8) to exercise rights to elect options and change beneficiaries under insurance and annuity policies and to surrender the policies for their cash value; (9) to reduce or disclaim any interest by testate or intestate succession or by inter vivos transfer consistent with paragraph (c) of EPTL 2-1.11; (10) to submit an application to the Department of Social Services for medical assistance as and when appropriate; (11) to handle tax matters; (12) to perform any and all acts, including the authority to prepare or arrange for preparation of, to sign and/or file all tax returns and to pay income, gift, estate and inheritance taxes and to sign and/or file all claims for refund or other documents relating thereto; and (13) to preserve assets as permitted by law without compromising entitlements to benefits for medical assistance under any governmental program. The aforementioned powers given to the guardian constitute the least restrictive form of intervention, as required in Mental Hygiene Law § 81.02 (a) (2).
The court approved the following stipulation entered into between the parties, as it is in the best interests of the AIP. Under the stipulation, petitioner is required to work with the discharge planners at Long Island Jewish Hospital for the timely discharge of Fannie Claiman to a skilled nursing facility. The stipulation provides that the hospital is willing to consider any nursing homes found by petitioner. The stipulation further provides that petitioner must be willing to consider *887 and not unreasonably withhold his consent to any placement of Fannie Claiman in a nursing home that may be found by the hospital. Moreover, pursuant to the stipulation, any of the parties presently before this court, as well as any nursing facility to which Fannie Claiman may be moved, can, on a 24-hour letter application to the court, bring to the court’s attention any type of inappropriate conduct of the guardian and a hearing would be held on notice to the parties based upon that 24-hour application. The stipulation further states that petitioner, as guardian, would not be authorized to remove Fannie Claiman from the skilled nursing facility without application to this court on notice to Protective Services for Adults and on notice to the facility.